AO 91 (Rev. 11/11)  Criminal Complaint

# UNITED STATES DISTRICT COURT
### for the
Middle District of Florida

| | |
|---|---|
| United States of America<br>v.<br>**WILLIAM THOMAS HOGAN**<br><br>_____<br>_Defendant(s)_ | )<br>)<br>)<br>)<br>)<br>)<br>) |

Case No.

3:24-mj- 1526-LLL

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of _____November 15, 2024_____ in the county of _____Duval_____ in the
_____Middle_____ District of _____Florida_____, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 2252(a)(4) | Possession of child pornography |

This criminal complaint is based on these facts:

See attached affidavit.

☑ Continued on the attached sheet.

_____
_Complainant's signature_

Ashley Wilson, HSI Special Agent
_Printed name and title_

Sworn to before me and signed in my presence.

Date:  November 18, 2024 @ 11:07am

_____
_Judge's signature_

City and state: _____Jacksonville, Florida_____

Laura Lothman Lambert, U.S. Magistrate Judge
_Printed name and title_

## **AFFIDAVIT**

I, Ashley Wilson, being duly sworn, hereby state as follows:

1. I am a Special Agent (SA) with Immigration and Customs Enforcement (ICE), Homeland Security Investigations (HSI), an agency of the United States Department of Homeland Security (DHS) and have been so employed since October 2007. I am currently assigned to the Office of the Assistant Special Agent in Charge Jacksonville, Florida, where I conduct a variety of investigations. Prior to this assignment, I was assigned to the Office of the Deputy Special Agent in Charge Laredo, Texas, for approximately 6 years also as a Special Agent. I have a bachelor's degree in criminal justice. I am a law enforcement officer of the United States and am thus authorized by law to engage in or supervise the prevention, detection, investigation or prosecution of violations of federal criminal law. I am responsible for enforcing federal criminal statutes under the jurisdiction of HSI. I participated in a 22-week training program at the Federal Law Enforcement Training Center in Brunswick, Georgia, which included the Criminal Investigator Training Program and ICE Special Agent Training. In my capacity as a Special Agent, I have participated in numerous types of investigations, during which I conducted or participated in physical surveillance, undercover transactions and operations, historical investigations, and other complex investigations. Since becoming a Special Agent, I have worked with experienced Special Agents and state and local law enforcement officers who also investigate child exploitation offenses.

2. I have investigated and assisted in the investigation of criminal matters

involving the sexual exploitation of children that constituted violations of 18 U.S.C. §§ 2251, 2252, 2252A, 2422, and 2423, as well as Florida state statutes that criminalize sexual activity with minors and other methods of child sexual exploitation. In connection with such investigations, I have served as the case agent and have served as an undercover agent in online child exploitation cases. During my investigations, I work closely with members of the local child exploitation task force comprised of agents and officers, from HSI, the Federal Bureau of Investigation (FBI), the Florida Department of Law Enforcement (FDLE), the Jacksonville Sheriff's Office (JSO), the St. Johns County Sheriff's Office (SJSO), and the Clay County Sheriff's Office (CCSO), among other agencies. These agencies routinely share information involving the characteristics of child sex offenders as well as investigative techniques and leads. As a federal agent, I am authorized to investigate and assist in the prosecution of violations of laws of the United States, and to execute search warrants and arrest warrants issued by federal and state courts.

3.      The statements contained in this affidavit are based on information I obtained from my personal observations, as well as from records and information directly provided to me by other law enforcement officers and personnel. This affidavit is being submitted for the limited purpose of establishing probable cause for the filing of a criminal complaint, and I have not included each and every fact known to me concerning this investigation. I have set forth only the facts that I believe are necessary to establish probable cause that WILLIAM THOMAS HOGAN has committed a

violation of 18 U.S.C. § 2252(a)(4)(B) and (b)(2), that is, knowing possession of visual depictions of minors engaging in sexually explicit conduct.

4.      This affidavit is made in support of a criminal complaint against WILLIAM THOMAS HOGAN, that is, in Duval County, on or about November 15, 2024, in the Middle District of Florida, WILLIAM THOMAS HOGAN did knowingly possess a matter that contained visual depictions that had been produced using materials that had been shipped and transported in and affecting interstate and foreign commerce, by any means, when the production of the visual depictions involved the use of minors engaging in sexually explicit conduct, and the visual depictions were of such conduct, and these depictions involved prepubescent minors in violation of 18 U.S.C. § 2252(a)(4)(B) and (b)(2).

5.      On February 2, 2024, I applied for and obtained a federal search warrant for information associated with Verizon Cloud data associated with phone number (407) 754-4012 from United States Magistrate Judge Laura Lothman Lambert in Case No. 3:24-mj-1028-LLL. This warrant authorized the search of the Verizon Cloud for fruits, evidence, and instrumentalities of violations of 18 U.S.C. §§ 2252 and 2252A, that is, possession, receipt, and distribution of child pornography. A copy of the application for that warrant is attached hereto as Exhibit 1 and the facts and information contained therein are hereby incorporated by reference.

6.      On the same day, I executed the search warrant and received return information on or about March 11, 2024. A review of the media stored in the Verizon

3

Cloud associated with phone number (407) 754-4012, owned by WILLIAM THOMAS HOGAN, revealed multiple files of child pornography. Based on my training and experience, and having worked numerous child exploitation investigations, I recognized several of the files as child pornography I have encountered in other investigations.

7.      During the investigation, I confirmed HOGAN resided at 5964 Wentworth Drive, Jacksonville, Florida 32277 and worked at Wal-Mart, after requesting employment records and conducting physical surveillance at both locations on multiple occasions. On November 15, 2024, at approximately 12:20 p.m., I approached HOGAN as he walked to his vehicle that was parked in the Wal-Mart parking lot located at 1650 San Pablo Road South in Jacksonville, Florida. I introduced myself to HOGAN as a federal agent with HSI and presented my badge and credentials. I also introduced HSI SA Chuck Hollis, who was present with me. I explained to HOGAN that I wanted to talk to him about an investigation. I also told HOGAN he did not have to answer any of my questions and was free to go at any time. HOGAN agreed to talk to me while standing in the Wal Mart parking lot outside of his vehicle. This conversation was audio recorded.

8.      HOGAN confirmed his full name, date of birth, phone number, and current residence in Jacksonville. HOGAN stated he had a Samsung cell phone and has service with Verizon. HOGAN acknowledged he does not share his devices with anyone and has had his Samsung cell phone since approximately the year 2021. When

I asked HOGAN how much child pornography was on his cell phone, HOGAN said, "I imagine there's probably a bit." HOGAN admitted to having a mixture of images and videos of child pornography files. HOGAN initially stated he had been viewing child pornography for "at least a couple of months."

9.     During the interview, HOGAN provided consent to search his Samsung Galaxy S23 cell phone. HOGAN's cell phone was manufactured in Vietnam. HOGAN accessed his cell phone and directed me to the location of child pornography files, which were stored in the "Gallery" of the "Secure Folder" application that requires an additional password. After HOGAN entered the password to the "Secure Folder" and handed me his cell phone, I viewed and confirmed there were multiple video files of child pornography in this location. A description of one of the video files is as follows:

> The color video is approximately two minutes and twenty-three seconds long with sound that begins with an adult male penetrating a prepubescent female child's anus while the child is lying on her stomach. At approximately the forty second mark of the video, the female child is turned over on her back and the adult male then penetrates the child's vagina with his erect penis until he ejaculates. I believe the video depicts a prepubescent female child based upon her lack of breast development, lack of any pubic hair, and the overall size of her body. Based on my training and experience and my review of this video, I believe it depicts at least one prepubescent minor engaged in sexually explicit conduct, that is graphic sexual intercourse, and therefore constitutes child pornography pursuant to Title 18, United States Code, Section 2256.

10.     HOGAN acknowledged he saved the child pornography files in this location on his cell phone to keep them protected. HOGAN admitted to receiving

child pornography via Wickr and Telegram, in both group chats and direct messages. HOGAN acknowledged possessing, downloading, and viewing child pornography is illegal and admitted to trading child pornography in the past. HOGAN admitted to masturbating to child pornography at least once a month.

11.    HOGAN later acknowledged he had been viewing child pornography for a year and a half. HOGAN denied having child pornography on any other electronic devices. When asked about the youngest child he had seen engaged in child pornography, HOGAN said, "toddler." HOGAN said he saved child pornography files involving toddlers, but never wanted it. HOGAN explained he saved the files as "a form of currency" to obtain additional child pornography files. HOGAN denied ever engaging in illegal sexual activity with a child.

12.    Based upon the foregoing facts, I have probable cause to believe that on or about November 15, 2024, in Duval County, in the Middle District of Florida, WILLIAM THOMAS HOGAN, did knowingly possess a matter that contained visual depictions that had been produced using materials that had been shipped and transported in and affecting interstate and foreign commerce, by any means, when the

production of the visual depictions involved the use of minors engaging in sexually explicit conduct, and the visual depictions were of such conduct, and these depictions involved prepubescent minors in violation of 18 U.S.C. § 2252(a)(4)(B) and (b)(2).

ASHLEY WILSON, Special Agent
Homeland Security Investigations

Subscribed and sworn to before me this \_\_18m\_\_ day of November ~~1111~~, 2024, at Jacksonville, Florida.

LAURA LOTHMAN LAMBERT
United States Magistrate Judge

7

# Exhibit 1

# UNITED STATES DISTRICT COURT

## for the
### Middle District of Florida

ENTRY THE FOREGOING TO BE A TRUE AND CORRECT COPY OF THE ORIGINAL,
CLERK OF COURT
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
DEPUTY CLERK

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*

information associated with Verizon Cloud associated
with phone number (407) 754-4012

)
)
)
)
)

Case No.  3:24-mj-1028-LL

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*
information associated with Verizon Cloud associated with phone number (407) 754-4012, located at Synchronoss Technologies Inc., 200 Crossing Blvd., Bridgewater, NJ 08807, described further in Attachment A

located in the _____ District of _____ New Jersey _____ , there is now concealed *(identify the person or describe the property to be seized):*
See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. §§ 2252 and 2252A | Possession, receipt, and distribution of child pornography |

The application is based on these facts:

See attached affidavit.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Ashley Wilson, HSI Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: February 2, 2024

_____
*Judge's signature*

Laura Lothman Lambert, United States Magistrate Judge
*Printed name and title*

City and state:  Jacksonville, Florida

## AFFIDAVIT IN SUPPORT OF A SEARCH WARRANT

I, Ashley Wilson, being duly sworn, hereby state as follows:

1.       I am a Special Agent (SA) with Immigration and Customs Enforcement (ICE), Homeland Security Investigations (HSI), an agency of the United States Department of Homeland Security (DHS) and have been so employed since October 2007. I am currently assigned to the Office of the Assistant Special Agent in Charge Jacksonville, Florida, where I conduct a variety of investigations. Prior to this assignment, I was assigned to the Office of the Deputy Special Agent in Charge Laredo, Texas, for approximately 6 years also as a Special Agent. I have a bachelor's degree in criminal justice. I am a law enforcement officer of the United States and am thus authorized by law to engage in or supervise the prevention, detection, investigation or prosecution of violations of federal criminal law. I am responsible for enforcing federal criminal statutes under the jurisdiction of HSI, including violations of law involving the exploitation of children. I participated in a 22-week training program at the Federal Law Enforcement Training Center in Brunswick, Georgia, which included the Criminal Investigator Training Program and ICE Special Agent Training. In my capacity as a Special Agent, I have participated in numerous types of investigations, during which I conducted or participated in physical surveillance, undercover transactions and operations, historical investigations, and other complex investigations. Since becoming a Special Agent, I have worked with experienced Special Agents and state and local law enforcement officers who also investigate child exploitation offenses.

2.     I have investigated and assisted in the investigation of criminal matters involving the sexual exploitation of children that constituted violations of 18 U.S.C. §§ 2251, 2252, 2252A, 2422, and 2423, as well as Florida state statutes that criminalize sexual activity with minors and other methods of child sexual exploitation. In connection with such investigations, I have served as the case agent and have served as an undercover agent in online child exploitation cases. During the course of my investigations, I have worked closely with members of the local child exploitation task force comprised of agents and officers, from HSI, the Federal Bureau of Investigation (FBI), the Florida Department of Law Enforcement (FDLE), the Jacksonville Sheriff's Office (JSO), the St. Johns County Sheriff's Office (SJSO), and the Clay County Sheriff's Office (CCSO), among other agencies. These agencies routinely share information involving the characteristics of child sex offenders, as well as investigative techniques and leads. As a federal agent, I am authorized to investigate and assist in the prosecution of violations of laws of the United States, and to execute search warrants and arrest warrants issued by federal and state courts.

3.     This affidavit is based upon my personal knowledge, experience, and training, as well as other information developed during the course of this investigation. Because this affidavit is being submitted for the limited purpose of establishing probable cause and securing a search warrant for content contained in, or associated with, the Verizon Cloud associated with telephone number (407) 754-4012, controlled by Synchronoss Technologies Inc. (hereafter referred to as Synchronoss), I have not included each and every fact known to me concerning this

2

investigation. I have set forth only the facts that I believe are necessary to establish probable cause to believe that contraband, fruits, instrumentalities, other items illegally possessed and evidence of violations of 18 U.S.C. §§ 2252 and/or 2252A, are present in the items to be searched.

4.      This affidavit is submitted under Title 18, United States Code, Sections 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), and Rule 41, Federal Rules of Criminal Procedure, requiring Synchronoss to disclose to the government records and other information in its possession pertaining to the subscriber or customer associated with the account referenced in this affidavit and further described in Attachment A, including the contents of communications. Synchronoss has a place of business at 200 Crossing Blvd., Bridgewater, NJ 08807. The facts in this affidavit are based on my personal observations, my training and experience, and information obtained from other agents, law enforcement officers, and witnesses.

## STATUTORY AUTHORITY

5.      This investigation concerns alleged violations of 18 U.S.C. §§ 2252 and 2252A, relating to material involving the sexual exploitation of minors. Based upon my training and experience, I know the following:

a.      18 U.S.C. § 2252(a) in pertinent part prohibits a person from knowingly transporting, shipping, receiving, distributing, reproducing for distribution, possessing or accessing with intent to view any visual depiction of minors engaging in sexually explicit conduct using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce, including by computer or mails.

3

b.      18 U.S.C. § 2252A(a) in pertinent part prohibits a person from knowingly transporting, shipping, receiving, distributing, reproducing for distribution, possessing, or accessing with intent to view any child pornography, as defined in 18 U.S.C. § 2256(8), using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce, including by computer.

c.      18 U.S.C. § 2252(a)(1) prohibits a person from knowingly transporting or shipping using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce, including by computer or mails, any visual depiction of minors engaging in sexually explicit conduct.  Under 18 U.S.C. § 2252(a)(2), it is a federal crime for any person to knowingly receive or distribute, by any means including by computer, any visual depiction of minors engaging in sexually explicit conduct using any means or facility of interstate or foreign commerce or that has been mailed or shipped or transported in or affecting interstate or foreign commerce.  That section also makes it a federal crime for any person to knowingly reproduce any visual depiction of minors engaging in sexually explicit conduct for distribution using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce or through the mails.  Under 18 U.S.C. § 2252(a)(4), it is also a crime for a person to knowingly possess or knowingly access with intent to view, one or more books, magazines, periodicals, films, or other materials which contain visual depictions of minors engaged in sexually explicit conduct that have been mailed, or have been shipped or transported using any means or facility of interstate or foreign commerce or in and affecting interstate or foreign

4

commerce, or which were produced using materials which have been mailed or so shipped or transported, by any means including by computer.

    d.  18 U.S.C. § 2252A(a)(1) prohibits a person from knowingly mailing, transporting, or shipping using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce by any means, including by computer, any child pornography. 18 U.S.C. § 2252A(a)(2) prohibits a person from knowingly receiving or distributing any child pornography that has been mailed or shipped or transported using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce by any means, including by computer. 18 U.S.C. § 2252A(a)(3) prohibits a person from knowingly reproducing child pornography for distribution through the mails or in or affecting interstate or foreign commerce by any means, including by computer.  18 U.S.C. § 2252A(a)(5)(B) prohibits a person from knowingly possessing or knowingly accessing with intent to view any book, magazine, periodical, film, videotape, computer disk, or other material that contains an image of child pornography that has been mailed, or shipped or transported using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce by any means, including by computer, or that was produced using materials that have been mailed, or shipped or transported using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce by any means, including by computer.

## DEFINITIONS

   6.  The following definitions apply to this Affidavit:

5

a.    "Child erotica," as used herein, means materials or items that are sexually arousing to persons having a sexual interest in minors but that are not, in and of themselves, illegal or that do not necessarily depict minors in sexually explicit poses or positions.

b.    "Child pornography," as used herein, includes the definitions in 18 U.S.C. §§ 2256(8) and 2256(9) (any visual depiction of sexually explicit conduct where (a) the production of the visual depiction involved the use of a minor engaged in sexually explicit conduct, (b) the visual depiction is a digital image, computer image, or computer generated image that is, or is indistinguishable from, that of a minor engaged in sexually explicit conduct, or (c) the visual depiction has been created, adapted, or modified to appear that an identifiable minor is engaged in sexually explicit conduct). See 18 U.S.C. §§ 2252 and 2256(2).

c.    "Visual depictions" include undeveloped film and videotape, data stored on computer disk or by electronic means which is capable of conversion into a visual image, and data which is capable of conversion into a visual image that has been transmitted by any means, whether or not stored in permanent format. See 18 U.S.C. § 2256(5).

d.    "Sexually explicit conduct" means actual or simulated (a) sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex; (b) bestiality; (c) masturbation; (d) sadistic or masochistic abuse; or (e) lascivious exhibition of the genitals or pubic area of any persons. See 18 U.S.C. § 2256(2).

6

e.      "Computer," as used herein, is defined pursuant to 18 U.S.C. §
1030(e)(1), as "an electronic, magnetic, optical, electrochemical, or other high speed
data processing device performing logical, arithmetic or storage functions, and includes
any data storage facility or communications facility directly related to or operating in
conjunction with such device."

f.      The terms "records," "documents," and "materials," as used herein,
include all information recorded in any form.

g.      "Internet Protocol address" or "IP address" refers to a unique
number used by a computer to access the Internet and is associated with a physical
address.  IP addresses can be dynamic, meaning that the Internet Service Provider (ISP)
may assign a unique and different number to a computer at different times that it
accesses the Internet.   IP addresses might also be static, if an ISP assigns a user's
computer a particular IP address which is used each time the computer accesses the
Internet.

## COMPUTERS AND CHILD PORNOGRAPHY

7.      Based upon my training and experience, as well as conversations with other
experienced law enforcement officers and computer forensic examiners, I know that
computers and computer technology, and the use of smart phones, have revolutionized
the way in which individuals interested in child pornography interact with each other. In
the past, child pornography was produced using cameras and film (either still
photography or movies). The photographs required darkroom facilities and significant
skill to develop and reproduce the images. There were definable costs involved with the

7

production of pornographic images, and to distribute these images on any scale required significant resources and significant risks. The photographs themselves were somewhat bulky and required secure storage to prevent their exposure to the public and/or law enforcement. The distribution of these wares was accomplished through a combination of personal contacts, mailings and telephone calls.

8.     The development of computers and smart phones has radically changed the way that child pornographers manufacture, obtain, distribute and store their contraband. Computers and smart phones basically serve five functions in connection with child pornography: access, production, communication, distribution, and storage.

9.     Child pornographers can now convert paper photographs taken with a traditional camera (using ordinary film) into a computer readable format with a device known as a scanner. Moreover, with the advent, proliferation and widespread use of digital cameras, images and videos can now be transferred directly from a digital camera onto a computer using a connection known as a USB cable or other device.

### INFORMATION REGARDING SYNCHRONOSS

10.     I know that Synchronoss provides e-commerce transaction management solutions to the communications services marketplace and is the cloud-based storage provider for anything stored on the Verizon Cloud. According to Verizon, "Verizon Cloud is a service that wirelessly stores your files in the cloud. Files are encrypted during transfer and stored securely. You can use them anytime on all your devices: phones, computers and tablets. Verizon Cloud can automatically back up your files, making it easy to upgrade devices and restore files after damage, theft or loss."

8

## CHILD PORNOGRAPHY COLLECTOR CHARACTERISTICS

11.     Based on my experience, training, and conversations with other experienced agents who investigate cases involving the sexual exploitation of children, I know that certain common characteristics are often present in individuals who collect child pornography. I have observed and/or learned about the reliability of these commonalities and conclusions involving individuals who collect, produce and trade images of child pornography. Based upon my training and experience, and conversations with other experienced agents who investigate cases involving the sexual exploitation of children, I know that the following traits and characteristics are often present in individuals who collect child pornography:

a.     Many individuals who traffic in and trade images of child pornography also collect child pornography. Many individuals who collect child pornography have a sexual attraction to children. They receive sexual gratification and satisfaction from sexual fantasies fueled by sexually explicit depictions of children.

b.     Many individuals who collect child pornography also collect other sexually explicit materials, which may consist of photographs, magazines, motion pictures, video tapes, books, slides, computer graphics or digital or other images for their own sexual gratification. Many of these individuals also collect child erotica, which may consist of images or text that do not meet the legal definition of child pornography, but which nonetheless fuel their deviant sexual fantasies involving children.

c.     Many individuals who collect child pornography often seek out like-

9

minded individuals, either in person or on the Internet, to share information and trade depictions of child pornography and child erotica as a means of gaining status, trust, acceptance, and support. This contact also helps these individuals to rationalize and validate their deviant sexual interest in children and associated behavior. The different Internet based vehicles used by such individuals to communicate with each other include, but are not limited to, Peer-to-Peer (P2P), email, email groups, bulletin boards, Internet Relay Chat Rooms (IRC), newsgroups, instant messaging, and other similar vehicles.

d.      Some individuals who collect child pornography maintain books, magazines, newspapers and other writings (which may be written by the collector), in hard copy or digital medium, on the subject of sexual activities with children as a way of understanding their own feelings toward children, justifying those feelings and finding comfort for their illicit behavior and desires. Such individuals often do not destroy these materials because of the psychological support that they provide.

e.      Some individuals who collect child pornography often collect, read, copy or maintain names, addresses (including email addresses), phone numbers, or lists of persons who have advertised or otherwise made known in publications and on the Internet that they have similar sexual interests. These contacts are maintained as a means of personal referral, exchange, or commercial profit. These names may be maintained in the original medium from which they were derived, in telephone books or notebooks, on computer storage devices, or merely on scraps of paper.

f.      Many individuals who collect child pornography rarely, if ever,

10

dispose of their sexually explicit materials and may go to great lengths to conceal and protect them from discovery, theft, or damage. These individuals view their sexually explicit materials as prized and valuable materials, even as commodities to be traded with other like-minded individuals over the Internet. As such, they tend to maintain or "hoard" their visual depictions of child pornography for long periods of time in the privacy and security of their homes or other secure locations. These individuals may protect their illicit materials by passwords, encryption, and other security measures; save it on movable media such as CDs, DVDs, flash memory, thumb drives, and removable hard drives, which can be very small in size, including even smaller than a postage stamp, and easily secreted; or send it to third party image storage sites via the Internet. Based on my training and experience, as well as my conversations with other experienced law enforcement officers who conduct child exploitation investigations, I know that individuals who possess, receive, and/or distribute child pornography by computer or smart phone devices using the Internet often maintain and/or possess the items listed in Attachment B.

12.     As stated in substance above and based upon my training and experience, as well as my conversations with other experienced law enforcement officers, I know that individuals who collect and trade child pornography often do not willfully dispose of their child pornography collections, even after contact with law enforcement officials. For example, I learned from HSI S/A Algozzini that he conducted an investigation in 2016 in the Middle District of Florida in which the subject had his residence searched in July

11

2016 pursuant to a state search warrant and his wireless telephone and computer tablet seized by the Jacksonville Sheriff's Office. The search of these devices revealed the subject knowingly possessed several images of child pornography. The subject retained an attorney, and both were made aware of the ongoing investigation into the subject's commission of child pornography offenses. Approximately two months later, the subject was arrested on federal child pornography charges. On the same day as the subject's arrest, HSI executed a federal search warrant and seized a wireless telephone acquired and used by the subject after the execution of the state search warrant at his residence. Subsequent forensic examination of this wireless telephone revealed that the subject had received, possessed and viewed images of child pornography numerous times on his new device after the execution of the state search warrant and before his federal arrest.

## FACTS ESTABLISHING PROBABLE CAUSE

13.     I make this affidavit in support of a search warrant for content held in the Verizon Cloud account associated with telephone number (407) 754-4012, which I believe is being used by William Thomas HOGAN. This affidavit is based upon information provided to me both verbally and in written documentation from other law enforcement officers and personnel, to include HSI Task Force Officer (TFO) Arteaga and Intelligence Analyst (IA) Davis, as well as through an investigation that I personally conducted as set forth herein.

14.     HSI is investigating the use of a smart phone associated to William Thomas HOGAN, to commit violations of 18 U.S.C. §§ 2252 and 2252A, which

12

prohibit the transportation, receipt, distribution, possession, and access with intent to view child pornography, that is, visual depictions of one or more minors engaging in sexually explicit conduct as defined in 18 U.S.C. § 2256.

15.     During December 2023, I learned from HSI TFO Arteaga that the Jacksonville Sheriff's Office (JSO) Internet Crime Against Children (ICAC) Unit received multiple CyberTipline Reports (herein referred to as Cyber Tips) from the National Center for Missing and Exploited Children (NCMEC) on or about March 29, 2023, through September 10, 2023. On or about January 8, 2024, I began reviewing the 22 Cyber Tips and suspected child sexual abuse material (CSAM) files. Throughout this investigation, I have discussed the details of this case with HSI TFO Arteaga. Based on my communications with him, and my review of documents provided by HSI TFO Arteaga, I have learned, among other things, the following information:

a.     From March 29, 2023, through September 10, 2023, NCMEC received 22 Cyber Tips from Synchronoss advising suspected CSAM files were discovered on the Verizon Cloud of a user with the telephone number (407) 754-4012. According to Synchronoss, the number of reported files in the Cyber Tips varied from one file to nine files. All of the suspected CSAM files were viewed by Synchronoss. On January 12, 2024, I submitted the hash values[1] of the reported files to NCMEC to

---

[1] A hash value is an alphanumeric sequence that is unique to a specific digital file. Any identical copy of the file will have exactly the same hash value as the original, but any alteration of the file, including even a change of one or two pixels, results in a different hash value. Consequently, an unknown image can be determined to be identical to an original file if it has the same hash value as the original. The hash value is, in essence, the unique fingerprint of that file, and when a match of the "fingerprint" occurs, the file also matches.

be compared with other depictions of known child victims for possible identification. On the same day, I learned that several of the reported files contained known minor children who have been previously identified by law enforcement.

16.     On or about January 12, 2024, I reviewed the 51 reported files previously viewed by Synchronoss and learned many of the files contained CSAM. Synchronoss specifically provided the following information for the account holder associated with the upload of a CSAM file in Cyber Tip number 168168104:

> Incident Time: 7/30/2023 at 21:10:37 UTC
> Phone: (407) 754-4012
> Number of Uploaded Files: 1

I have reviewed the file, and a description is as follows:

> This video file is 01:10 in length and has sound. The video depicts a completely nude prepubescent female child positioned on her knees on a bed. An adult male with an erect penis is also depicted in the video and near the child on the same bed. The adult male's erect penis penetrates the female child's mouth for approximately 40 seconds. The focus of the video transitions to the female child's bare vagina and anus. The adult male then penetrates the female child's anus with his erect penis for the duration of the video. I believe the female in the video is a prepubescent child based on the lack of breast development, lack of pubic hair, the overall size of her body, and knowing this file depicts at least one child victim previously identified by law enforcement. Based on my training and experience, I believe the file depicts at least one minor engaged in sexually explicit conduct, that is graphic sexual intercourse, oral-genital and anal-genital, and therefore constitutes child pornography pursuant to 18 U.S.C. § 2256.

17.     On or about January 11, 2024, I conducted research on telephone number (407) 754-4012 using a law enforcement database and discovered it resolves

to William Thomas HOGAN with an address of 5964 Wentworth Drive, Jacksonville, Florida 32277. On or about the same date, IA Davis identified (407) 754-4012 as linked to HOGAN's Snapchat and Cash App accounts. On or about the same date, I queried the address in the Florida Driver and Vehicle Information Database (DAVID) and learned HOGAN has listed 5964 Wentworth Drive, Jacksonville, Florida 32277 as his mailing address since October 29, 2022. According to DAVID, HOGAN's residential address on his driver's license is listed as 843 Alderman Road, Apt 672, Jacksonville, Florida 32211, which is the residence he lived in prior to moving to 5964 Wentworth Drive in Jacksonville.

18.     On January 11, 2024, I issued a summons to Verizon requesting all available information to include previous and current devices registered to the customer, respective identifying numbers of those devices (IMEI; serial number; device model, device type/brand etc.), and any associated IP addresses for (407) 754-4012. On January 17, 2022, Verizon provided the requested information. I have since reviewed the documentation and a summary of the information is as follows:

Subscriber Name: William Hogan
Address: 460 Cheryl Drive, Deltona, FL 32738 (HOGAN's mother's residence)
Account number: 225979515-1
Effective Date: 7/13/2020
Status: Active

Device: SAMSUNG GALAXY S23 256 BLK
Device ID: 89148000008545371670
IMEI: 355552513493594
IMSI: 311480804262287
Effective Date: 7/13/2020

15

19.     Based on the foregoing, I have probable cause to believe that fruits, evidence, instrumentalities, and contraband, including images of child pornography, and information and data related to the receipt, distribution, and/or possession of child pornography, are currently contained in the Verizon Cloud account of William Thomas HOGAN, associated to phone number (407) 754-4012, further described in Attachment A, in violation of 18 U.S.C. §§ 2252 and 2252A.

20.     Accordingly, I respectfully request a search warrant be issued by this Court authorizing the search and forensic examination of the Verizon Cloud account of William Thomas HOGAN, associated to phone number (407) 754-4012 listed in Attachment A, for evidence as set forth in Attachment B.

21.     Because the warrant will be served on Synchronoss Technologies Inc., who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

16

20.     Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant.

ASHLEY WILSON, Special Agent
Homeland Security Investigations

Subscribed and sworn to before me this 2nd day of ~~January,~~ February 2024, at Jacksonville, Florida.

LAURA LOTHMAN LAMBERT
United States Magistrate Judge

17

## ATTACHMENT A

## DESCRIPTION OF LOCATION TO BE SEARCHED

This warrant applies to information contained in and associated with the Verizon Cloud account associated with phone number (407) 754-4012 that is stored at a location controlled by Synchronoss Technologies Inc., a company that accepts service of legal process at 200 Crossing Blvd., Bridgewater, NJ  08807 or via email at Content-Abuse@synchronoss.com.

## ATTACHMENT B

### LIST OF ITEMS TO BE SEIZED AND SEARCHED

**I.    Information to be disclosed by Synchronoss Technologies Inc.**

To the extent that the information described in Attachment A is within the possession, custody, or control of Synchronoss Technologies Inc., (herein referred to as Synchronoss), Synchronoss is required to disclose the following information to the government for the account listed in Attachment A.  Such information should include the following:

1.    All content stored in the Verizon Cloud account associated with telephone number (407) 754-4012, from March 1, 2023 through the current date.

**II.    Information to be seized by the government**

All correspondence, records, documents, photographs, videos, electronic mail, chat logs, and electronic messages that constitute fruits, evidence, and instrumentalities of violations of 18 U.S.C. §§ 2252, and 2252A, and also including, for the account listed on Attachment A, the following items from March 1, 2023 through the current date:

1.    Evidence of who used, owned, or controlled the account listed on Attachment A;

2.    Evidence of the times that the account listed on Attachment A was used;

3.     Passwords and encryption keys, and other access information that may be necessary to access the account or identifier listed on Attachment A and other associated accounts.

**III.   Method of delivery**

Synchronoss shall disclose responsive data, if any, by emailing response to Ashley.Wilson@ice.dhs.gov, notwithstanding 18 U.S.C. 2252A or similar statute or code.

2